Green v. Fox & others.

---

### Noble T. Green *vs.* Annie R. S. Fox & others.

A mechanic's lien is waived, if, before any money becomes due to him under the contract, he accepts on account thereof the negotiable promissory notes of his employer for the amount, payable after the time when the money would become due and his right to file a petition to enforce his lien would expire, and actually negotiates the same, and there is no evidence of the actual intent of the parties in giving and receiving them; and the fact that he afterwards takes them up and offers to surrender them in court is immaterial.

PETITION to enforce a mechanic's lien for $4550, for labor and materials furnished and used in the construction of a steam-engine and two boilers in a certain building of which William B. Fox, deceased, was a part owner. The defendants were the present owners and claimants of the property.

It was agreed in the superior court that the engine and boilers were completed on the 5th of August 1861, and that William B. Fox made and delivered to the petitioner, on account of the contract under which they were made, several negotiable promissory notes, amounting in all to $4550, and dated at various dates from June 15th to August 3d 1861, payable a part in

seven and a part in six months from date, to the petitioner or order, which notes were accepted, indorsed and negotiated by him. Upon these facts, *Morton*, J. ruled that the petition could not be maintained, and that it was immaterial that the notes were not paid by Fox, but were paid, after protest, by the petitioner, and were produced by him in court and tendered to the respondents. Under these rulings, a verdict was returned for the respondents, and the case was reported for the determination of this court.

*G. F. Hoar*, for the petitioner. A lien upon personal property is not destroyed by the acceptance and negotiation of a negotiable promissory note. *Arnold* v. *Delano*, 4 Cush. 33, and cases cited. *Miles* v. *Gorton*, 2 Cr. & M. 504. So of a right of stoppage *in transitu*. *Newhall* v. *Vargas*, 15 Maine, 314, and cases cited. These cases are analogous. The use of the word " lien " in the statute shows the intent of the legislature to have the same principles apply, so far as applicable. *Bacon* v. *Charlton*, 7 Cush. 581. *Merchants' Bank* v. *Cook*, 4 Pick. 411. It should, in any event, have been left to the jury to determine whether the notes were received in payment. The fact that if they were so received the party would be deprived of a substantial benefit has a strong tendency to show that it was not so intended. *Curtis* v. *Hubbard*, 9 Met. 328. *Butts* v. *Dean*, 2 Met. 76. *Pomroy* v. *Rice*, 16 Pick. 22. A case precisely similar to the present is *Wheeler* v. *Schroeder*, 4 R. I. 383.

*F. H. Dewey*, for the respondents, cited *Ilsley* v. *Jewett*, 2 Met. 173; *Rindge* v. *Breck*, 10 Cush. 43. *Bangs* v. *Watson*, 9 Gray, 211; *Handrahan* v. *Cheshire Iron Works*, 4 Allen, 396; *Morton* v. *Austin*, 12 Cush. 389.

BIGELOW, C. J. We are of opinion that the petitioner did not offer any evidence sufficient to rebut the presumption of payment arising from his acceptance of the negotiable promissory notes of his debtor for the amount due under his contract. It is doubtless true that, in giving effect to this presumption, we must hold that the petitioner voluntarily surrendered the lien which otherwise he might have had on the real estate upon which the labor and materials were furnished and used, and the

alleged structure was built. Standing by itself, unexplained by other circumstances, such a surrender would have a tendency to show that the notes were not intended as payment. But looking at the whole transaction in the present case, it seems to us quite clear that the petitioner, when he received the notes of his debtor, had no intention to rely on his right to establish a lien, but designed to seek payment in another form and by other means. The notes were received by the petitioner before the work which he had stipulated to perform was completed — some of them several weeks before, and before anything was due to the petitioner; they were made payable six months or more after the time when the money would become due to him under the contract, and they were all indorsed and negotiated by the petitioner, so that he received the proceeds of them very soon after they were given. The legitimate and reasonable inference from these facts is, that the parties understood and intended that the notes should be substituted in the place of the plaintiff's claim under his contract; that thereby, by a negotiation of the notes, he might obtain the money which would be due to him in anticipation of the completion of the work, and the person for whom the work was done might postpone to a later day the payment of the sum which would otherwise fall due as soon as the work was finished. Under such circumstances, if the petitioner had commenced an action to recover the amount due for his services and the labor and materials furnished by him, immediately after the completion of the work, can there be any doubt that he would have failed to maintain it? Would it not have been a good defence, that notes payable at a future day, which the plaintiff had negotiated, had been given for the full amount due under this contract? Clearly so. It would be the ordinary case where the presumption of payment arising from the giving of negotiable notes for a simple contract debt would have full force and effect. Nor can we see that this presumption is overcome or even weakened by the fact that the petitioner had a right of lien, which, if the notes are regarded as payment, he must be held to have waived. The enforcement of such a right is wholly inconsistent with the acts of the parties

in giving and receiving the notes. To retain the lien under the contract, it was necessary for the petitioner to file a certificate on or before the thirtieth day of September 1860, being thirty days from the completion of the work, in the office of the clerk of the city, according to the provision contained in Gen. Sts. *c.* 150, § 5, and to commence a suit to enforce it on or before the third day of November following, as required by Gen. Sts. *c.* 150, § 7. But at this time, and for several months afterwards, the notes which the petitioner had received on account of the work under the contract were outstanding in the hands of third parties, the indorsees to whom they had been negotiated by him. The result would therefore necessarily follow, if the notes were not intended as payment and the right of lien still continued in full force, that the petitioner might compel payment of the money due under the contract by a sale of the real estate of the promisor, while at the same time the latter would be responsible for the same amount to the holder of the notes. We cannot think that the parties at the time the notes were given contemplated any such double liability on the part of the owner of the estate for whom the work was done. The more reasonable conclusion is, that the petitioner elected to take for his debt that which at the time it was received he might have deemed more valuable than a right of lien — negotiable notes from which he could at once obtain the money which was coming due to him at a future day under his contract. Such being the true nature of the transaction, it is quite immaterial that the petitioner, since the commencement of these proceedings, has taken up the notes which he received in payment, and now brings them into court. The rights of the parties were fixed and determined by the legal character of their acts and dealings at the time the notes were given, and cannot be affected or changed by any subsequent act of one of the parties, which was not originally contemplated, and the performance of which depended entirely on the pecuniary ability of the promisee to take up the notes at the time when they matured. The notes having been taken in payment, and the right of lien thereby surrendered, it could not afterwards be revived by the mere

fulfilment by the promisee of his contract as indorser with the holders of the notes.

The view which we have taken of the case is strengthened by the entire absence of any evidence to show an actual intent by the parties that the lien should remain in force after the notes were given. In the case of *Morton* v. *Austin*, 12 Cush. 389, where it was expressly agreed that notes given on account of the contract should not be deemed to be a discharge of the lien, it was held that no action to enforce the lien could be maintained while the notes were outstanding in the hands of third parties to whom they had been negotiated. Perhaps in that case, if the notes had been taken up by the party to whom they were given, he might have enforced his lien in pursuance of the special agreement. But in the case at bar there is no evidence of such agreement, and the legal effect of the facts in proof is to rebut the inference that there was any such understanding between the parties.

It is objected by the petitioner that the court erred in not submitting the case to the jury to determine whether the notes were given or received in payment of the money due on the contract. But the answer to this objection is twofold. The first is, that it does not appear that the petitioner asked to go to the jury on this question. The other and more decisive answer is, that the evidence would not have warranted the jury in finding a verdict for the petitioner on this point, and if one had been rendered in his favor it would have been the duty of the court to set it aside.                    *Judgment on the verdict.*